**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VANDAIRE KNOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10 CV 1186 |
| v. ) | |
| ) | |
| KEVIN E. SIMS, in his individual ) | JURY TRIAL DEMANDED |
| capacity, COOK COUNTY SHERIFF, ) | |
| a local government body, and COOK ) | |
| COUNTY, a municipality, ) | |
| ) | |
| Defendants. ) | |

**AMENDED COMPLAINT**

Plaintiff, VANDAIRE KNOX ("Knox"), by and through his attorneys, Hogan Marren, Ltd., as his Amended Complaint against Defendants, KEVIN E. SIMS ("Sims"), COOK COUNTY SHERIFF, and COOK COUNTY, states as follows:

**Parties**

1. Plaintiff, Vandaire Knox, resides within the jurisdiction of this Court and at all times relevant has been in the custody of the Cook County Jail as a pre-trial detainee.

2. Defendant, Kevin E. Sims, is employed by Cook County. At all times relevant, Sims worked as a physician assistant at the Cook County Jail. Sims is being sued in his individual capacity.

3. Defendant, Cook County Sheriff, is a local government body located in Cook County, Illinois.

4. Defendant, Cook County, is a municipal corporation organized under the laws of the State of Illinois.

**Jurisdiction and Venue**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

6. Venue is proper under 28 U.S.C. § 1391(b) as all events or omissions giving rise to the claims herein occurred within the Northern District of Illinois.

**Facts Common to All Counts**

7. In November 2005, Knox was housed as a pre-trial detainee in Division IX of the Cook County Jail ("Division IX").

8. On or about November 26, 2005, another detainee kicked a metal railing, which dislodged and struck Knox in his lower back.

9. On February 16, 2006, based upon the refusal of Sims to properly treat or diagnose Knox, Knox filed a complaint in the District Court for the Northern District of Illinois, Case No. 06 CV 00888, against, among others, Sims and Cook County for the failure to provide necessary medical treatment (the "2006 Lawsuit").

10. The parties reached a settlement agreement, and, on September 25, 2007, the Court dismissed the 2006 Lawsuit.

11. In or about spring 2006, while Knox was sitting in a chair at the workout facility in Division IX, a fight ensued between two other Division IX detainees.

12. As a result of this fight, three to four men fell on top of Knox while Knox remained seated in the chair, at which time the leg of the chair broke, causing the chair to collapse under Knox.

13. When the chair collapsed, Knox sustained an injury to his left knee as he fell to the floor with the other men on top of him.

14. Following Knox's knee injury, Knox was taken for an examination by a physician at Cermak Health Services ("Cermak"), a department within the Cook County Health and Hospitals System. This physician determined that Knox tore a ligament in his knee which would require Knox to undergo surgery.

15. In or about spring 2006, Knox was placed on a pre-trial detainee waitlist for surgery (the "Waitlist") at Cermak.

16. As of October 2006, Knox had yet to receive surgery for his torn ligament.

17. In October 2006, Knox was transferred from Division IX to the Stateville Correctional Facility ("Stateville").

18. Once transferred to Stateville, Knox was removed from the Waitlist.

19. In or about fall 2006, while at Stateville, Knox was sent to the University of Illinois at Chicago Medical Center ("UIC") for an initial magnetic resonance imaging ("MRI") of his knee.

20. Following the initial MRI, a physician at UIC prescribed Knox physical therapy and pain medication.

21. Knox never received any physical therapy while at Stateville.

22. Knox filed several grievances at Stateville regarding the failure to provide the prescribed physical therapy and the continued swelling of and pain from his injured knee.

23. Based upon the failure of Stateville to respond to Knox's grievances, an attorney contacted Stateville on behalf of Knox and requested that Knox receive another examination by a physician at UIC.

24. In or about spring 2009, Knox was sent to UIC for a second MRI of his knee.

25. On September 3, 2009, Knox was transferred back to the Cook County Jail.

26. Due to this transfer, Knox never received the results of the second MRI from UIC.

27. During intake processing at the Cook County Jail, Knox was required to see Sims because of Knox's history of asthma and seizures, and his use of a knee brace and back support. Upon information and belief, Sims recognized Knox as the individual who filed a lawsuit against him in 2006.

28. At presentation, Sims asked Knox what type of medication Knox takes for his seizures. When Knox responded that he was taking 500 milligrams of Dilantin per day, Sims yelled at Knox that the dosage was too high, and then told Knox to get out of the examination room.

29. Knox was prohibited from seeing another physician on September 3, 2009, and was denied medicine for his seizures and knee and back pain.

30. On September 4, 2009, Sims examined Knox and referred Knox to see a bone therapist at Cermak regarding the pain in Knox's knee.

31. On September 7, 2009, Knox filed a grievance (the "September Grievance") with the Cook County Department of Corrections (the "D.O.C.") informing the D.O.C. that Knox was kicked out of Sims' office and did not receive any medication for his seizures, knee or back. A true and correct copy of the September Grievance is attached hereto as Exhibit A.

32. On September 9, 2009, Knox received a response from the D.O.C. informing him that the September Grievance was referred to Cermak's Medical Director. A true and correct copy of the D.O.C.'s September 9, 2009 response is attached hereto as Exhibit B.

33. On September 18, 2009, Knox appealed the D.O.C.'s September 9, 2009 response, stating that the referral to the "Medical Director does not make this action better." *See* Exhibit B.

34. Through the end of September 2009, Knox received no further examination, treatment or medication for his seizures or his knee and back pain.

35. In October 2009, Knox began to receive Dilantin for his seizures.

36. Between September 5, 2009 and October 12, 2009, Knox began to undergo excruciating pain in his knee, which prohibited him from walking properly. As a result, Cermak issued Knox a cane.

37. On October 13, 2009, Knox was taken to see Dr. James Kapotas ("Kapotas"), a physician at Cermak, for an X-ray of his knee. Kapotas prescribed Knox pain medication, ordered Knox to wear his personal shoes to support his knee, ordered Knox to have a third MRI, and scheduled Knox to begin physical therapy.

38. As of November 3, 2009, Knox had not received the third MRI or any physical therapy for his knee.

39. On November 3, 2009, Knox completed a medical request slip, advising Cermak that Knox was not receiving physical therapy for his knee.

40. After Cermak failed to provide the third MRI, the prescribed physical therapy, or a response to his November 3, 2009 request, Knox filed a subsequent medical

request slip on November 12, 2009, informing Cermak that Knox was not receiving physical therapy and that he was in constant pain.

41.   After again receiving neither the MRI, the prescribed physical therapy nor a response to his November 12, 2009 request, Knox submitted another medical request slip on November 20, 2009, informing Cermak that his knee had begun to swell.

42.   On November 29, 2009, after again receiving no response from Cermak, Knox submitted a fourth medical request slip, informing Cermak of his urgent need for the prescribed physical therapy.

43.   On November 30, 2009, Knox filed a second grievance (the "November Grievance") with the D.O.C., on which he wrote across the top, "Emergency Grievance! This is not a request."  A true and correct copy of the November Grievance is attached hereto as Exhibit C.

44.   In the November Grievance, Knox informed the D.O.C. that he was prescribed physical therapy by a physician at Cermak on October 13, 2009, and, after forty-seven (47) days, he had yet to receive any therapy.  *See* Exhibit C.

45.   On December 4, 2009, Knox received a written denial of the appeal of his September Grievance.  The D.O.C.'s Appeal Board's basis for the denial was the active investigation of his September Grievance.  *See* Exhibit B.

46.   As of the date of filing this Amended Complaint, Knox has yet to receive any information or follow-up regarding this alleged investigation.

47.    On December 7, 2009, Knox was examined by Dr. Chad J. Zawitz ("Zawitz"), a physician at Cermak.  Zawitz determined that Knox needed an MRI on his

knee. Zawitz scheduled Knox to receive the MRI at an outside facility. Zawitz also prescribed physical therapy and pain medication, and refitted Knox for a new knee brace.

48. Zawitz informed Knox that Zawitz would call Knox in three (3) weeks to check if Knox needed stronger pain medication for his knee.

49. As of the date of filing this Amended Complaint, Knox has not received a telephone call from Zawitz nor has he received the third MRI or a new knee brace.

50. On December 22, 2009, Knox received a response from the D.O.C. regarding his November Grievance. The response informed Knox that the D.O.C. referred the November Grievance to the Division Physician. A true and correct copy of the D.O.C.'s December 22, 2009 response is attached hereto as Exhibit D.

51. On December 22, 2009, Knox appealed the D.O.C.'s December 22, 2009 response on the basis that, as of December 22, 2009, Knox had yet to receive any physical therapy. *See* Exhibit D.

52. As of the date of filing this Amended Complaint, Knox has yet to receive a response from the D.O.C. regarding Knox's December 22, 2009 appeal.

53. On February 11, 2010, Knox sent a letter to Zawitz informing Zawitz that Knox had yet to receive the MRI, the prescribed physical therapy ordered by Zawitz on December 7, 2009, or a telephone call from Zawitz regarding Knox's pain medication. A true and correct copy of Knox's February 11, 2010 letter is attached hereto as Exhibit E.

54. As of the date of filing this Amended Complaint, Knox has yet to receive any response from Zawitz regarding Knox's February 11, 2010 letter.

55. In or about April 2010, Knox saw Dr. Terrance P. Baker at the Cermak seizure clinic. Dr. Baker informed Knox that Cermak scheduled Knox for physical therapy several months ago, but Cermak failed to take Knox to the scheduled sessions.

56. In or about April 2010, Knox began receiving physical therapy.

57. As part of his physical therapy, Knox was ordered to perform exercises after each session when he returned to Division IX; however, the equipment necessary to perform these exercises was not available to Knox at Division IX.

58. After receiving five (5) to six (6) sessions of therapy, Knox was informed that his prescription for therapy had expired.

59. Following the expiration of this prescription, Knox has yet to receive any further examination of or physical therapy for his knee.

**Count I – Fourteenth Amendment Due Process Claim Against Defendant Sims In His Individual Capacity – Failure To Provide Necessary Medical Treatment**

60. Knox reasserts and re-alleges paragraphs 1 – 59 above as if set forth fully herein.

61. As a physician assistant, at all times relevant, Sims was tasked with providing medical services to inmates housed in Division IX of the Cook County Jail.

62. On September 3, 2009, Sims was made aware that Knox required medication for his history of seizures and his knee and back pain.

63. On September 3, 2009, Sims was deliberately indifferent to Knox's health and safety as Sims yelled at Knox and kicked Knox out of Sims' office.

64. Sims was aware that, by kicking Knox out of his office, Knox would be prohibited from seeing another physician or receiving proper medication on September 3, 2009.

65. Sims' refusal to examine Knox showed a reckless and callous indifference to Knox's need for medical attention.

WHEREFORE, Plaintiff, Vandaire Knox, respectfully requests that this Court enter an order granting the following relief:

a) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Kevin E. Sims, for compensatory damages arising out of the deprivation of Knox's rights under the Fourteenth Amendment to the United States Constitution, including damages for the past, current, and future physical injuries that Knox has sustained or will sustain as a result of Sims' conduct;

b) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Kevin E. Sims, for punitive damages arising out of his reckless and callous disregard for Knox's rights under the Fourteenth Amendment to the United States Constitution;

c) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Kevin E. Sims, for attorneys' fees and costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988; and

d) Ordering any and all other relief that this Court deems equitable and just.

**Count II – Fourteenth Amendment Due Process Claim Against Defendant Sims In His Individual Capacity – Punishment Without Procedural Protection**

66. Knox reasserts and re-alleges paragraphs 1 – 59 above as if set forth fully herein.

67. As a physician assistant, at all times relevant, Sims was tasked with providing medical services to inmates housed in Division IX of the Cook County Jail.

68. On September 3, 2009, Sims was made aware that Knox required medication for his history of seizures and his knee and back pain.

69. On September 3, 2009, Sims arbitrarily and without purpose yelled at Knox and kicked Knox out of his office without a necessary medical examination and without providing necessary medical treatment.

70. By kicking Knox out of his office, Sims imposed punishment upon Knox without due process by arbitrarily denying Knox necessary medication and medical treatment.

71. Sims' enforcement of an arbitrary punishment showed a reckless and callous indifference to Knox's right to be free from punishment without due process of law.

WHEREFORE, Plaintiff, Vandaire Knox, respectfully requests that this Court enter an order granting the following relief:

a) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Kevin E. Sims, for compensatory damages arising out of the deprivation of Knox's rights under the Fourteenth Amendment to the United States Constitution, including damages for the past, current, and future physical injuries that Knox has sustained or will sustain as a result of Sims' conduct;

b) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Kevin E. Sims, for punitive damages arising out of his reckless and callous disregard for Knox's rights under the Fourteenth Amendment to the United States Constitution;

c) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Kevin E. Sims, for attorneys' fees and costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988; and

d) Ordering any and all other relief that this Court deems equitable and just.

**Count III – *Monell* Claim Against Defendant Cook County Sheriff**

72. Knox reasserts and re-alleges paragraphs 1 – 59 above as if set forth fully herein.

73. The Cook County Sheriff has enacted a grievance policy (the "Grievance Policy"), under which detainees may file complaints with the D.O.C..

74. Under the Grievance Policy, the Cook County Sheriff has enacted a four-step policy under which:

   a) A detainee may file a grievance with the D.O.C.;

   b) The D.O.C. must issue a response to the detainee;

   c) The detainee may file an appeal to challenge the D.O.C.'s response; and

   d) The D.O.C.'s Appeal Board must issue a decision regarding the detainee's appeal.

75. On November 30, 2009, Knox filed the November Grievance with the D.O.C. to complain that he was not receiving necessary physical therapy. *See* Exhibit C.

76. On December 22, 2009, Knox received a response to the November Grievance informing Knox that the D.O.C. referred the November Grievance to the Division Physician. *See* Exhibit D.

77. On December 22, 2009, Knox appealed the November Grievance. *See* Exhibit D.

78. As of the date of filing this Amended Complaint, Knox has yet to receive any response from the D.O.C.'s Appeal Board regarding the November Grievance.

79. Although Knox filed the November Grievance on November 30, 2009, Knox did not receive any physical therapy until April 2010.

80. Upon information and belief, the D.O.C. has failed to respond to grievances regarding similar medical concerns filed and/or appealed by numerous other pre-trial detainees housed in Division IX.

81. Under the Grievance Policy, the Cook County Sheriff has a custom of failing to respond to detainee grievances that do not present severe or life-threatening medical concerns.

82. This custom proximately caused the deprivation of Knox's right to receive necessary medical treatment.

WHEREFORE, Plaintiff, Vandaire Knox, respectfully requests that this Court enter an order granting the following relief:

  a) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Cook County Sheriff, for compensatory damages arising out of the deprivation of rights under the Fourteenth Amendment to the United States Constitution, including damages for the past, current, and future physical injuries that Knox has sustained or will sustain as a result of the Cook County Sheriff's conduct;

  b) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Cook County Sheriff, for attorneys' fees and costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988; and

  c) Ordering any and all other relief that this Court deems equitable and just.

**Count IV – *Monell* Claim Against Defendant Cook County**

83. Knox reasserts and re-alleges paragraphs 1 – 59 above as if set forth fully herein.

84. Cermak is a unit within the Cook County hospital system and is the daily provider of health care at Cook County Jail.

85. Cook County has enacted a policy under which detainees may seek necessary medical assistance by submitting medical request slips to Cermak.

86. On November 3, 12, 20, and 29, 2009, Knox filed separate medical request slips (the "Medical Request Slips") advising Cermak that Cermak medical staff

12

prescribed Knox necessary physical therapy, and that Knox was not receiving any therapy.

87. As of date of filing this Amended Complaint, Knox has yet to receive any response from Cermak regarding the Medical Request Slips.

88. Upon information and belief, if Knox had not seen Dr. Baker in April 2010 regarding Knox's seizures, Knox would have never received any physical therapy for his knee while detained in the Cook County Jail.

89. Cermak failed to take any action pursuant to Knox's medical request slips to ensure that Knox received physical therapy.

90. Upon information and belief, the D.O.C. has failed to provide any response to medical request slips submitted by numerous other pre-trial detainees housed in Division IX regarding similar medical concerns.

91. Under the Cook County medical request slip policy, Cook County has a custom of completely ignoring detainee medical requests that do not present severe or life-threatening medical concerns.

92. This custom proximately caused the deprivation of Knox's right to receive necessary medical treatment.

WHEREFORE, Plaintiff, Vandaire Knox, respectfully requests that this Court enter an order granting the following relief:

    a) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Cook County, for compensatory damages arising out of the deprivation of rights under the Fourteenth Amendment to the United States Constitution, including damages for the past, current, and future physical injuries that Knox has sustained or will sustain as a result of Cook County's conduct;

    b) Entering Judgment in favor of Plaintiff, Vandaire Knox, and against Defendant, Cook County, for attorneys' fees and costs pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988; and

    c) Ordering any and all other relief that this Court deems equitable and just.

**Count V – Indemnification Against Cook County**

93. Knox reasserts and re-alleges paragraphs 1 – 59 above as if set forth fully herein.

94. In committing the acts alleged in this Amended Complaint, Sims, at all times relevant, was acting as an agent of Cook County, and within the scope of his employment.

95. In committing the acts alleged in this Complaint, Sims acted in violation of constitutional law.

96. Pursuant to 745 ILCS 10/9-102, Cook County is empowered and directed to pay any tort judgment for which it or an employee acting within the scope of his employment is found liable.

WHEREFORE, Plaintiff, Vandaire Knox, respectfully requests that this Court enter an order granting the following relief:

    a) Ordering Defendant, Cook County, to indemnify Defendant, Kevin E. Sims, for all damages entered against Sims within the scope of his employment with Cook County; and

    b) Ordering any and all other relief that this Court deems equitable and just.

## **JURY DEMANDED**

Plaintiff, Vandaire Knox, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) as to all issues so triable.

Respectfully submitted,

VANDAIRE KNOX, Plaintiff


By:   s/ Kelly McCloskey Cherf
         One of His Attorneys

Kelly McCloskey Cherf
J. Michael Tecson
Nicholas M. Hudalla
Hogan Marren, Ltd.
180 N. Wacker Drive, Suite 600
Chicago, IL  60606
312-946-1800