**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VANDAIRE KNOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10 CV 1186 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| KEVIN E. SIMS, in his individual ) | |
| capacity, COOK COUNTY SHERIFF, ) | JURY TRIAL DEMANDED |
| a local government body, and COOK ) | |
| COUNTY, a municipality, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO KEVIN E. SIMS' AND COOK COUNTY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, TO BIFURCATE *MONELL* CLAIMS**

Plaintiff, VANDAIRE KNOX ("Knox"), by and through his attorneys, Hogan Marren, Ltd., as his Response to Defendants, KEVIN E. SIMS' ("Sims") and COOK COUNTY'S (collectively, the "Defendants"), Motion to Dismiss Plaintiff's Amended Complaint, or, in the Alternative, to Bifurcate *Monell* Claims, states as follows:

**INTRODUCTION**

On February 22, 2010, Knox, a pretrial detainee in the Cook County Jail, submitted a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, against Cook County, Thomas Dart, Dr. Avery Hart, Leonard Bersky, and Sims. On March 9, 2010, pursuant to 28 U.S.C. § 1915A, this Court conducted a prompt initial review of the Complaint, and dismissed the allegations against Cook County, Thomas Dart, and Leonard Bersky. On July 9, 2010, Knox, by and through his attorneys, Hogan Marren, Ltd., filed an Amended Complaint against Kevin E. Sims, Cook County Sheriff (the "Sheriff"), and Cook County.

Knox's Amended Complaint alleges: (1) Sims, in his individual capacity, violated Knox's Fourteenth Amendment due process rights by failing to provide necessary medical treatment (Count I); (2) Sims, in his individual capacity, violated Knox's Fourteenth Amendment due process right by punishing Knox without procedural protections (Count II); (3) a *Monell* claim against the Sheriff for the failure of the Sheriff to respond to detainee grievances that do not present severe or life-threatening medical concerns (Count III); (4) a *Monell* claim against Cook County for the failure to respond to detainee medical request slips that do not present severe or life-threatening medical concerns (Count IV); and (5) indemnification against Cook County (Count V).

Defendants Sims and Cook County are now seeking to dismiss Counts I, II and IV of the Amended Complaint, or, in the alternative, to bifurcate and stay discovery on Count IV until there is a finding of a constitutional violation. For the reasons stated herein, Knox's Amended Complaint sufficiently states a cause of action under Counts I, II and IV, and, as a result, Defendants Sims' and Cook County's motion must be denied. Further, this Court should deny Defendant Cook County's motion to bifurcate Count IV.

## BACKGROUND

In our about spring 2006, while Knox was housed as a pretrial detainee in Division IX of the Cook County Jail ("Division IX"), a fight ensued between two other Division IX detainees. (Compl. at ¶¶ 10, 11). As a result of the fight, three to four men fell on top of Knox while Knox was seated in a chair. (Compl. at ¶ 12). The leg of the chair broke, the chair collapsed, and Knox injured his left knee. (Compl. at ¶ 12).

Following the knee injury, Knox was examined by a physician at Cermak Health Services ("Cermak"). (Compl. at ¶ 14). The physician determined that Knox tore a

ligament in his left knee, which required surgery. (Compl. at ¶ 14). Knox was placed on a pretrial detainee waitlist for surgery (the "Waitlist") at Cermak. (Compl. at ¶ 15). In October 2006, Knox was transferred from Division IX to the Stateville Correctional Facility, at which time he was removed from the Waitlist. (Compl. at ¶¶ 17, 18). In or about fall 2006, Knox was taken to the University of Illinois at Chicago Medical Center ("UIC") for magnetic resonance imaging ("MRI") of his knee. (Compl. at ¶ 19). The physician at UIC prescribed Knox with physical therapy and pain medication. (Compl. at ¶ 20).

On September 3, 2009, Knox was transferred back to the Cook County Jail. (Compl. at ¶ 25). During intake processing, Knox saw Sims regarding Knox's asthma, seizures, use of a knee brace, and back pain. (Compl. at ¶ 27). At presentation, Sims yelled at Knox and told Knox to get out of his office. (Compl. at ¶ 28). On September 4, 2009, Sims examined Knox and referred Knox to see a bone therapist regarding the pain in his knee. (Compl. at ¶ 30). Through the end of September 2009, Knox received no further examination, treatment or medication. (Compl. at ¶ 34).

Between September 5, 2009 and October 12, 2009, Knox began to undergo excruciating pain in his knee, which prohibited him from walking properly. (Compl. at ¶ 36). On October 13, 2009, Knox saw Dr. James Kapotas, a physician at Cermak, for an X-ray of his Knee. (Compl. at ¶ 37). Dr. Kapotas prescribed Knox pain medication, ordered Knox to wear his personal shoes to support his knee, ordered Knox to have a third MRI, and scheduled Knox to begin physical therapy. (Compl. at ¶ 37).

On November 3, 2009, Knox submitted a medical request slip informing Cermak that he was not receiving physical therapy for his knee. (Compl. at ¶ 39). On November

3

12, 2009, Knox submitted another medical request slip informing Cermak that he was not receiving physical therapy and that he was in constant pain. (Compl. at ¶ 40). On November 20, 2009, Knox submitted a medical request slip informing Cermak that his knee had begun to swell. (Compl. at ¶ 41).

On December 7, 2009, Knox was examined by Dr. Chad J. Zawitz, a physician at Cermak. (Compl. at ¶ 47). Dr. Zawitz scheduled Knox to receive an MRI, prescribed Knox physical therapy and pain medication, and refitted Knox for a new knee brace. (Compl. at ¶ 47). In or about April 2010, Knox saw Dr. Terrance P. Baker at the Cermak seizure clinic. (Compl. at ¶ 55). Dr. Baker informed Knox that Cermak scheduled Knox for physical therapy, but Cermak failed to take Knox to the scheduled sessions. Knox began receiving physical therapy in April 2010. (Compl. at ¶ 56). After receiving five (5) to six (6) sessions of therapy, Knox was informed that his prescription expired. (Compl. at ¶ 58).

## STANDARD OF REVIEW

When evaluating a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts as alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard is satisfied where "the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4

## ARGUMENT

**I. In Count I, Knox Sufficiently Pled A Fourteenth Amendment Due Process Claim By Alleging That Sims Was Deliberately Indifferent To Knox's Objectively Serious Medical Condition.**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105. In the case of a pretrial detainee, Fourteenth Amendment rights, rather than Eighth Amendment rights are at issue; however, the "standards are essentially interchangeable." *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). A plaintiff's complaint sufficiently pleads a cause of action for deliberate indifferent to a serious medical condition if the plaintiff alleges that: (1) he had a serious medical condition; and (2) the defendants acted with deliberate indifference to that condition. *Adams v. Cook County Dept. of Corrections*, 485 F. Supp. 2d 940, 942 (N.D. Ill. 2007).

A. <u>Knox sufficiently alleged an objectively serious medical condition</u>

As stated by the Defendants, "An objectively serious medical condition is one that 'has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" (Mot. to Dismiss p. 4 (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)) (emphasis added)). In spring 2006, a physician at Cermak "determined that Knox tore a ligament in his knee which would require Knox to undergo surgery." (Compl. at ¶ 14). In or about fall 2006, "a physician at UIC prescribed Knox physical therapy and pain medication." (Compl. at ¶¶ 19-20). On September 4, 2009, Sims "referred Knox to see a bone therapist at Cermak

5

regarding the pain in Knox's knee." (Compl. at ¶ 30). On October 13, 2009, Dr. Kapotas "prescribed Knox pain medication, ordered Knox to wear his personal shoes to support his knee, ordered Knox to have a third MRI, and scheduled Knox to begin physical therapy." (Compl. at ¶ 37). On December 7, 2009, Dr. Zawitz prescribed physical therapy and pain medication, and refitted Knox for a new knee brace." (Compl. at ¶ 47).

Each of these individual allegations, taken alone, would satisfy the requirement that the plaintiff "has been diagnosed by a physician as mandating treatment." *McGee v. Ramos*, No. 09 C 8006, 2010 WL 3937617, at *3 (N.D. Ill. Oct. 5, 2010). Taken together, these allegations certainly set forth far beyond that which is required to allege that Knox had an objectively serious medical condition.

The Defendants assert that Knox did not allege that "excruciating" pain occurred in his knee until after he was seen by Sims, and that Knox pled himself out of court by asserting that Cook County fails to respond to "detainee grievances that do *not* present severe or life-threatening medical concerns." (Mot. to Dismiss at p. 4) (emphasis in original). However, Knox is not required to allege that he ever underwent "severe" or "excruciating" pain. Rather, it is clear that "[a] medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain." *Jones v. Natesha*, 151 F. Supp. 2d 938, 945 (N.D. Ill. 2001). Further, as stated by the United States Supreme Court:

> In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "[i]t is but just that the public be

6

required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."

*Estelle*, 429 U.S. at 103-04. Therefore, the plaintiff must simply allege that he has a medical condition "that has been diagnosed by a physician as mandating treatment." *McGee*, 2010 WL 3937617, at *3. As Knox more than sufficiently alleged that he was diagnosed by multiple physicians as mandating treatment, Knox pled an objectively serious medical condition.

  B. <u>Knox sufficiently alleged that Sims was deliberately indifferent to Knox's medical condition</u>

A plaintiff sufficiently pleads deliberate indifference to one's medical condition by alleging that the defendant "intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones*, 151 F. Supp. 2d at 946. As alleged, during intake processing, Knox was required to see Sims because of his "history of asthma and seizures, and use of a knee brace and back support." (Compl. at ¶¶ 27, 62). Immediately after Knox informed Sims of the type of medication Knox takes for his seizures, but prior to Sims' examination of Knox, Sims yelled at Knox and told Knox to get out of the examination room. (Compl. at ¶¶ 28, 63, 64). These allegations set forth not only Sims' awareness of Knox's medical conditions, but also Sims' intentional denial of Knox's access to the corresponding medical treatment. Therefore, Knox sufficiently alleged that Sims was deliberately indifferent to Knox's medical condition.

The Defendants assert that Knox fails to state a cause of action as "Plaintiff's only claim for deprivation as a result of this denial is that he was unable to see another physician *that day*." (Mot. to Dismiss p. 6) (emphasis in original). However, the

7

Defendants overlook the fact that the deliberate indifference element focuses on the "subjectively culpable state" of the defendant, not the length or duration of the harm. *See Adams*, 485 F. Supp. 2d at 942-43. Further, in *Gayton*, the court found the plaintiff's claim sufficient to withstand a motion for summary judgment as the record showed that, because the defendant actively ignored requests for treatment, the plaintiff incurred "many more hours of needless suffering for no reason." 593. F.3d at 625. Therefore, the overnight delay in access to necessary medical treatment is sufficient to amount to Sims' deliberate indifference under the Fourteenth Amendment.

    C. <u>Sims' deliberate indifference resulted in injury to Knox</u>

The Defendants assert that to properly plead a cause of action for deliberate indifference to a serious medical condition, the plaintiff must set forth "that [defendant's] indifference caused [him] some injury." (Mot. to Dismiss at p. 6). However, the Defendants' only basis for this "third element" arises from a reliance on *Gayton v. McCoy*, 593 F.3d 610 (7th Cir. 2010). The *Gayton* court, however, was applying the standard of review for a motion for summary judgment. 593 F.3d at 613. Further, as noted in *Gayton*, it is a "rare instance that a plaintiff can proffer *no evidence* that a delay in medical treatment exacerbated an injury." *Id.* at 624 (emphasis added). Therefore, this alleged injury requirement is improper at the motion to dismiss stage as it requires a weighing of the evidence. Further, as noted in Section I.B., *supra*, by setting forth that the defendant caused "hours of needless suffering for no reason," a plaintiff sufficiently alleges an injury under the Fourteenth Amendment. Therefore, not only is there an insufficient basis for the Defendants' assertion of this "third element" at this time, but,

8

under *Gayton*, Knox sufficiently set forth an injury resulting from Sims' deliberate indifference.

Knox has sufficiently set forth an objectively serious medical condition, as well as Sims' deliberate indifference to that condition. Further, although not required at the pleading stage, Knox has also set forth an injury arising from Sims' inaction. Therefore, this Court should find that Knox alleged a cause of action under the Fourteenth Amendment and deny the Defendants' Motion to Dismiss Count I of Knox's Amended Complaint.

## II. In Count II, Knox Sufficiently Pled A Fourteenth Amendment Due Process Claim By Alleging That Sims Imposed Punishment Without Procedural Protection.

The Defendants assert that Count II should be dismissed because it is "identical to Plaintiff's Count I." (Mot. to Dismiss at p. 7). Although both claims arise under the Fourteenth Amendment, under Count I, Plaintiff clearly asserts that Sims' deliberate indifference to Knox's serious medical condition constitutes a due process violation. As stated in Section I, *supra*, to state a cause of action for deliberate indifference to one's serious medical condition, a plaintiff must allege that: (1) he had a serious medical condition; and (2) the defendants acted with deliberate indifference to that condition. *Adams*, 485 F. Supp. 2d at 942. Whereas, under Count II, Knox asserts a separate and distinct cause of action arising from Sims' imposition of punishment upon Knox without providing procedural protection. A claim for punishment without procedural protection arises when the plaintiff alleges that: (1) like under Count I, the defendant was deliberately indifferent to the plaintiff's needs; and (2) the plaintiff has alleged some

9

sufficiently severe punishment. *Stone-El v. Sheahan*, 914 F. Supp. 202, 205-06 (N.D. Ill 1995).

    A. <u>Knox sufficiently alleged that Sims was deliberately indifferent to Knox's needs</u>

"In order to survive a motion to dismiss, the complaint need only plead the legal conclusion that the defendant acted with the requisite mental state." *Love v. Sheahan*, 156 F. Supp. 2d 749, 758 (N.D Ill 2001). In *Love*, the court found sufficient to allege deliberate indifference the plaintiff's allegations that the defendants acted with a "deliberate or reckless disregard," and, "with callous disregard and with reckless or deliberate indifference," knew plaintiff's rights were being violated. *Id.* In his Amended Complaint, Knox met the pleading standard set forth under *Love* with the lone allegations that Sims was "aware that Knox required medication" and that Sims "showed a reckless and callous indifference to Knox's right to be free from punishment." (Compl. at ¶¶ 68, 71). However, Knox's allegations far exceed the standard as set forth in *Love*, as the pleadings set forth in detail the specific actions that amounted to deliberate indifference, as Knox alleged that "At presentation . . . Sims yelled at Knox that the dosage was too high, and then told Knox to get out of the examination room," and on "September 3, 2009, Sims arbitrarily and without purpose yelled at Knox and kicked Knox out of his office without a necessary medical examination." (Compl. at ¶¶ 28, 69). Therefore, the Amended Complaint is more than sufficient to allege Sims' deliberate indifference.

    B. <u>Knox sufficiently alleged that Sims' actions amounted to punishment</u>

The Defendants further assert that Knox makes "no independent arguments aside from bare recitation of the Fourteenth Amendment." (Mot. to Dismiss at p. 7). However, as required to state a claim for punishment without procedural protection, Knox clearly

10

sets forth how Sims' inaction amounted to a sufficiently severe punishment. If a restriction "is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of a governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979). As alleged in the Amended Complaint, "Sims arbitrarily and without purpose yelled at Knox and kicked Knox out of his office without a necessary medical examination and without providing necessary medical treatment. By kicking Knox out of his office, Sims imposed punishment upon Knox without due process by arbitrarily denying Knox necessary medication and medical treatment." (Compl. at ¶¶ 69, 70). Under *Bell*, Knox sufficiently alleged that Sims' actions were arbitrary and purposeless, and therefore, Knox alleged that these actions amounted to sufficiently severe punishment in violation of the Fourteenth Amendment.

Knox has sufficiently set forth Sims' deliberate indifference to Knox's needs. Further, by alleging the arbitrary and purposeless nature of this indifference, Knox has also set forth a sufficiently severe punishment under the Fourteenth Amendment. Therefore, this Court should find that Knox alleged a cause of action under the Fourteenth Amendment and deny the Defendants' Motion to Dismiss Count II of Knox's Amended Complaint.

### III. In Count IV, Knox Sufficiently Pled A *Monell* Claim Against Cook County.

A plaintiff sufficiently states a claim against a municipality under Section 1983 by asserting that: (1) an "express policy" caused a constitutional deprivation; (2) a widespread practice that constitutes "custom or usage" caused a constitutional

11

deprivation; or (3) a constitutional injury was caused or ratified by a person with final decision making authority. *Hare v. Zitek*, 414 F. Supp. 2d 834, 860-61 (N.D. Ill. 2005).

As asserted by Knox, Cook County has a policy under which detainess may seek medical assistance by submitting medical request slips to Cermak. (Compl. at ¶ 85). On November 3, 12, 20, and 29, 2009, Knox filed medical request slips advising Cermak that he was not receiving prescribed physical therapy. (Compl. at ¶ 86). Cermak failed to provide any response to Knox's medical request slips, and, upon information and belief has failed to provide any response to requests submitted by numerous other pretrial detainees. (Compl. at ¶¶ 88, 90). Cook County's failure to respond to Knox's numerous requests proximately caused the deprivation of Knox's right to receive necessary medical treatment as this shortcoming resulted in the failure to provide prescribed, scheduled physical therapy from October 2009 until April 2010. (Compl. at ¶ 92).

The Defendants assert that Knox failed to set forth a *Monell* claim against Cook County as "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." (Mot. to Dismiss at p. 7). However, the Defendants improperly analogize Cook County's medical request slip policy to a grievance policy. Further, a municipality's failure "to have a system in place so that medical requests of detainees are reviewed promptly by properly trained medical staff and acted upon in a reasonable manner" provides a substantial basis for municipal liability under Section 1983. *Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1095 (N.D. Ill. 2007).

The Defendants further assert that Knox failed to allege a constitutional violation because the "[f]ailure to obey an internal grievance policy is not, by itself, a

constitutional violation," and "[Knox] did not suffer a significant injury." Again, Knox's claim against Cook County does not involve a grievance procedure. Further as more fully set forth in Section I.A., *supra*, Knox was diagnosed and prescribed physical therapy by multiple physicians, and therefore, Knox sufficiently pled a serious medical condition. Because of Cook County's systematic failure to enforce its policy on medical requests, although prescribed by Dr. Kapotas in October 2009, Knox did not receive any physical therapy until April 2010. (Compl. at ¶¶ 37, 88). This systematic failure amounts to a violation of Knox's constitutional right to be free from punishment without procedural protection. *See Thomas*, 499 F. Supp. 2d at 1096. Therefore, Knox sufficiently pled a *Monell* claim against Cook County.

### IV. The Defendants Have Failed To Provide Any Basis To Bifurcate And Stay Discovery On *Monell* Topics.

The Defendants request that this Court bifurcate Knox's *Monell* claim against Cook County until Knox establishes that he suffered a constitutional violation. The constitutional violation alleged against Cook County is separate and distinct from that asserted against Sims.

The Defendants assert that "governmental employees cannot be held liable in their official capacities in a Section 1983 action unless the Plaintiff can show that he suffered injuries of a constitutional magnitude as a result of an official policy, custom or practice." (Mot. to Dismiss at p. 9). However, "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010) (emphasis in original).

13

Like in *Terry v. Cook County Dept. of Corrections*, the "Defendants have not sufficiently explained why a verdict in favor of the individual [officer] and against the County would be an inconsistent verdict in this case." No. 09 C 3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010). Further, Knox's claim against Cook County is unrelated to the action, or moreover the inaction, of Sims. In Counts I and II, Knox asserts that Sims' failure and refusal to treat Knox on September 3, 2010 amounted to a denial of necessary medical treatment and arbitrary punishment. In Count IV, Knox asserts that Cook County's systematic failure to respond to medical requests proximately caused the deprivation of Knox's right to prescribed physical therapy between October 2009 and April 2010.

The underlying facts and constitutional violation alleged against Cook County are separate and distinct from the facts and violations alleged against Sims. Therefore, even if Sims is found not to have committed a constitutional violation, this Court may find Cook County liable to Knox without creating an inconsistent verdict. Consequently, bifurcation of the *Monell* claim will only delay the inevitable proceedings on the *Monell* claim, as any determination made under Counts I and II will have no bearing on Cook County's liability. As bifurcation will simply delay, rather than expedite, the overall proceedings, this Court should deny the Defendants' request for bifurcation.

\*     \*     \*

WHEREFORE, Plaintiff, Vandaire Knox, respectfully requests that this Court deny Defendants, Kevin E. Sims' and Cook County's, Motion to Dismiss in its entirety, deny the Defendants' Motion to Bifurcate Plaintiff's *Monell* Claim against Cook County, and grant all other relief that this Court deems equitable and just.

                                      Respectfully submitted,

                                      VANDAIRE KNOX, Plaintiff

                                      By:   s/ Nicholas M. Hudalla
                                               One of His Attorneys

Kelly McCloskey Cherf
J. Michael Tecson
Nicholas M. Hudalla
Hogan Marren, Ltd.
180 N. Wacker Drive, Suite 600
Chicago, IL 60606
(312) 946-1800

**CERTIFICATE OF SERVICE**

I, Nicholas M. Hudalla, hereby certify that on November 12, 2010, I electronically filed the foregoing document, **Plaintiff's Response to Kevin E. Sims' and Cook County's Motion to Dimiss Plaintiff's Amended Complaint, or in the Alternative, to Bifurcate *Monell* Claims**, via the CM/ECF system of the United States District Court for the Northern District of Illinois, which will send notification to the following:

    Scott Nehls (scott.nehls@cookcountyil.gov)
    James C. Pullos (james.pullos@cookcountyil.gov)
    Cook County State's Attorney's Office
    500 Richard J. Daley Center
    Chicago, Illinois 60602
    (312) 603-3473

    Patick S. Smith (Patrick.smith@cookcountyil.gov)
    Cook County State's Attorney's Office Daley Ctr.
    500 Richard J. Daley Center
    Chicago, Illinois 60602
    (312) 603-1422

    Kent S. Ray (kent.ray@cookcountyil.gov)
    Cook County State's Attorneys' Office
    Conflicts Counsel Unit
    69 West Washington Street, Suite 2030
    Chicago, Illinois 60602
    (312) 603-1427

                                                                s/ Nicholas M. Hudalla