IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VANDAIRE KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 CV 1186 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| KEVIN E. SIMS, in his individual capacity, | ) | |
| and COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vandaire Knox filed a first amended complaint pursuant to 42 U.S.C. § 1983, based on his medical problems while detained pretrial at Cook County Jail. Plaintiff alleges that defendant Kevin Sims ("Sims"), in his individual capacity, violated plaintiff's Fourteenth Amendment due process rights by exhibiting deliberate indifference to his medical conditions (Count I) and by punishing him without procedural protections (Count II). The amended complaint also asserts a Monell claim against defendant Cook County for its alleged custom of failing to respond to detainee medical request slips that do not present severe or life-threatening medical concerns (Count IV).[1] Count V asserts a claim for indemnification against defendant Cook County. Defendants have filed the instant motion to dismiss plaintiff's amended complaint for failure to state a claim on which relief can be granted, or in the alternative, to bifurcate and stay discovery on plaintiff's Monell claim until there is a finding of a constitutional violation. For the following reasons, the court grants defendants' motion to dismiss.

---

[1] On November 12, 2010, the parties agreed to a voluntary dismissal with prejudice of Count III of plaintiff's first amended complaint, which asserted a Monell claim against the Cook County Sheriff.

**BACKGROUND**[2]

Plaintiff, a pretrial detainee at the Cook County Jail, sustained a knee injury in spring 2006. He was taken to Cermak Health Services ("Cermak"), which provides medical services for the Cook County Jail. A doctor determined that plaintiff had torn a ligament in his knee, and placed him on a pretrial detainee waitlist for surgery. The following fall, plaintiff was still awaiting surgery when he was transferred to the Stateville Correctional Facility and removed from the surgery waitlist. Officials at Stateville sent him to the University of Illinois at Chicago Medical Center ("UIC") for a magnetic resonance imaging ("MRI"). After reviewing the MRI, a doctor at UIC prescribed physical therapy and pain medication. Plaintiff, however, never received any physical therapy while at Stateville. The only other treatment plaintiff received while at Stateville was a second MRI in spring 2009, the results of which he never received.

Plaintiff was transferred back to the Cook County Jail on September 3, 2009. As part of standard intake procedures, plaintiff met with defendant Sims, a physician's assistant. Sims recognized plaintiff, who had filed an unrelated lawsuit against him in 2006. Sims asked plaintiff what medication he was taking. When plaintiff responded that he was taking 500 milligrams of Dilantin per day, Sims yelled (according to the grievance form plaintiff later filed): "That's impossible. You'll be dead. Get out!" Plaintiff left the office.

The next day, Sims examined plaintiff and referred him to a bone therapist at Cermak for his knee condition. Plaintiff's doctor's appointment was the following month. In the

---

[2] The following facts come from the first amended complaint, and for purposes of evaluating defendants' motion to dismiss, the court accepts them as true.

interim—specifically, from September 5 to October 12, 2009—plaintiff "began to undergo excruciating pain in his knee." His walking became impaired, and Cermak issued him a cane.

On October 13, 2009, plaintiff attended his doctor's appointment at Cermak. The doctor x-rayed his knee, prescribed pain medication, and instructed plaintiff to wear his personal shoes to support his knee. The doctor ordered plaintiff to have a third MRI and scheduled physical therapy for him.

As of November 3, 2009—three weeks after that appointment—plaintiff had not received the third MRI or physical therapy, so he submitted a medical request slip advising Cermak of that fact. Plaintiff filed a second medical request slip on November 13, 2009, in which he informed Cermak that he was not receiving physical therapy and was in constant pain. On November 20, 2009, plaintiff submitted a third medical request slip, this time explaining that his knee had begun to swell. Plaintiff filed a fourth medical request slip on November 29, 2009, again informing Cermak that he needed physical therapy.

Plaintiff's next doctor's appointment was December 7, 2009. The doctor prescribed physical therapy and pain medication, and refitted plaintiff for a new knee brace. He also determined that plaintiff needed another MRI and scheduled him to receive it at an outside facility. The doctor told plaintiff he would call in three weeks to see if plaintiff needed stronger pain medication.

Plaintiff, however, did not receive any physical therapy until the following spring, after he met with a doctor at Cermak's seizure clinic and told him that he had not received the physical therapy that had been prescribed four months before. Beginning in April 2010, plaintiff received five or six therapy sessions, after which he was informed that his prescription had

3

expired. As of the filing of his amended complaint, plaintiff had not received any additional physical therapy or other medical attention.

## DISCUSSION

### I. Legal Standards

A court must dismiss any complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court thus accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," id. at 555, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). In addition, its allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." Twombly, 550 U.S. at 555, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004).

### II. Count I

Plaintiff asserts that Sims violated plaintiff's Fourteenth Amendment due process right to adequate medical care because, on September 3, 2009, Sims yelled at plaintiff and kicked plaintiff out of his office, thereby depriving him of medical treatment until the following day. Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment; those claims are assessed under the same standards used for a detained prisoner's Eighth Amendment deliberate indifference claims. Williams v. Rodriguez, 509 F.3d 392, 401 (7th Cir. 2007). A

deliberate indifference claim must allege that the plaintiff suffered from an objectively serious medical condition, and that the defendant was deliberately indifferent to that condition. Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006), citing Zentmyer v. Kendall County, 220 F.3d 805, 810 (7th Cir. 2000). Because plaintiff's allegations do not address either of these elements, his claim cannot survive defendants' motion to dismiss.

 First, plaintiff has failed to allege an objectively serious medical condition to which Sims was deliberately indifferent. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008). Plaintiff alleges that he was diagnosed with a torn ligament in his knee in 2006, and that he had suffered from back pain and seizures, but it does not allege that any of these conditions were diagnosed by or obvious to Sims three years later on September 3, 2009.

 Even though plaintiff has not alleged that his medical conditions were diagnosed or obvious on September 3, 2009, the "objectively serious" element could also be satisfied if plaintiff alleged that Sims' failure to provide treatment "would [have] result[ed] in further significant injury or unnecessary and wanton infliction of pain." Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). Plaintiff has not made any such allegation. He alleges that Sims was deliberately indifferent on September 3, 2009, by refusing to complete the medical evaluation that was required as part of plaintiff's intake at the jail. But he also alleges that Sims completed that examination the next day, on September 4, 2009. While plaintiff states that he experienced excruciating knee pain, he does not attribute this pain to Sims' actions on September 3. Instead, he alleges that the pain began on September 5, 2009—after Sims examined him on September 4

and referred him to Cermak. Plaintiff has not alleged that the one-day delay in treatment caused him unnecessary pain or caused his condition to worsen.

Plaintiff also claims that he was deprived of his seizure medication after September 3, 2009, but he does not allege that he suffered any injury or pain as a result of that deprivation or that Sims was responsible for depriving him of the medication. Because plaintiff has not alleged that the one-day delay in treatment from September 3 to September 4, 2009, resulted in either "further significant injury" or "unnecessary and wanton infliction of pain," id., he has not pled that his medical condition was objectively serious.

Second, plaintiff has failed to plead that defendant Sims' conduct on September 3, 2009, was subjectively deliberately indifferent. "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk." Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010). Plaintiff alleges that Sims kicked plaintiff out of his office, but examined him the following day and referred him to a bone therapist. His allegations thus establish that his treatment was delayed for one day. They do not, however, establish that Sims subjectively knew that this one-day denial of treatment would cause a substantial risk of harm, or that Sims disregarded that risk. Plaintiff's account does not establish that Sims ignored a known need for medical attention. He has therefore failed to allege the second element of a deliberate indifference claim.

### III. Count II

Count II of plaintiff's amended complaint alleges that Sims "arbitrarily and without purpose yelled at Knox and kicked Knox out of his office without a necessary medical examination and without providing sufficient medical treatment," thereby "impos[ing]

6

punishment upon Knox without due process." Because these allegations fail to articulate a cognizable claim distinct from the claim plaintiff asserts in Count I, this count is dismissed.

**IV.    Count IV**

Plaintiff claims, pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978), that defendant Cook County's custom of failing to respond to detainee medical requests "that do not present severe or life-threatening medical conditions" deprived him of his "right to receive necessary medical treatment." A municipality can be found liable under § 1983 if it deprives a plaintiff of a constitutional right "through a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005) (internal quotations omitted).

Plaintiff's claim, however, does not state a constitutional violation. The underlying constitutional violation plaintiff alleges is a Fourteenth Amendment deliberate indifference claim, which requires him to allege "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (emphasis added). The alleged custom at issue, however, is that Cook County ignores inmates' medical request slips that "do not present severe or life-threatening medical concerns." Among the factors a court considers in determining whether a medical need is "serious" is the severity of the problem. See Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill. 1984). If the problem is not severe, no constitutional deprivation results from officials' failure to address it in a timely fashion. Essentially, plaintiff complains that Cook County has an unconstitutional custom of ignoring non-constitutionally-significant complaints. Because plaintiff has failed to allege a custom that

has deprived him of a constitutional right, the court grants defendants' motion to dismiss this claim.

**V.     Count V**

Because the court dismisses plaintiff's claims against defendant Sims, it also dismisses Count V, an Illinois state law claim requesting that defendant Cook County indemnify Sims for the claims against him.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. The court expresses its appreciation to attorneys Kelly McCloskey Cherf, J. Michael Tecson, and Nicholas M. Hudalla of Hogan Marren, Ltd., for their excellent representation of plaintiff pursuant to appointment by the court.

**ENTER:      January 13, 2011**

_____
**Robert W. Gettleman
United States District Judge**